**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHARLES DERRICK KELLER,**  ) | |
| **# 06822-025,**  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| **vs.**  ) | **Case No. 16-cv-565-NJR** |
| ) | |
| **J.S. WALTON, *et al*.,**  ) | |
| ) | |
| **Defendants.**  ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff is a federal inmate currently incarcerated at the FCI-Memphis, where he was housed when he filed this case on May 23, 2016 (Doc. 1, pp. 1, 7). He brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Specifically, he sues a number of parties in connection with his previous incarceration at the USP-Marion, Illinois, where he was confined until July 1, 2014. On that date, Plaintiff was transferred, and he has not been housed in Marion since then. He was incarcerated for a time at USP-Coleman, and eventually was placed in FCI-Memphis. The complaint seeks declaratory relief, compensatory and punitive damages.

On August 18, 2016, Plaintiff filed a motion for temporary restraining order (TRO) and preliminary injunction (Doc. 10), which includes a 19-page memorandum of law and 65 pages of exhibits. In the motion, he seeks relief that he did not request in the complaint – specifically, an injunction requiring him to again be housed in a single-man cell due to his serious mental health conditions, and to restrain Defendants from "any further retaliatory/discriminatory transfer" of

him. The motion also requests other specific equitable relief.

The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. The motion for TRO and preliminary injunction also shall be discussed.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See*

*Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff has been under the care of a psychologist during his incarceration; he has been "diagnosed as a complex trauma victim" (Doc. 1-1, pp. 5, 10). As a result of his mental health condition, Plaintiff experiences intense distress and anxiety if he is confined in a cell with another inmate, or if he is in crowded areas. He also loses his appetite when he is under stress, and he has stopped eating for extended periods (Doc. 1-1, p. 10).

On November 19, 2009, the chief psychologist (Defendant Patterson) recommended that Plaintiff be assigned to a single cell at Marion, due to his high level of energy and anxiety, and the difficulty of finding a cellmate who could tolerate his behavior (Doc. 1-1, p. 5; Doc. 1-2, p. 2). Plaintiff was housed in a single cell from November 2009 to September 2011, when he was placed in Marion's Special Housing Unit ("SHU") for a disciplinary infraction. Upon his release from the SHU, Marion staff planned to transfer Plaintiff to a higher security institution. Psychology staff intervened, however, and prevented his transfer.

While still at Marion, Plaintiff had a succession of three cellmates who could not tolerate him. After that experience, he was again placed in a single cell in general population from February 1, 2012, to April 3, 2014, when he was moved back to the SHU. Plaintiff requested to be returned to a single cell after his SHU release.

On May 22, 2014, when the time came for Plaintiff to leave the SHU, Defendant J. Byram assigned him to a three-man cell (Doc. 1-1, p. 6). Defendant J. Byram then had Officer

Mowery (who is not a Defendant) issue Plaintiff a disciplinary report for allegedly refusing this cell placement. On the same day, Defendants Behle (case manager), S. Byram (unit manager and wife of Defendant J. Byram), and Walton (Warden) submitted orders to transfer Plaintiff to a "Mental Health Care Level 3" prison placement (Doc. 1-1, pp. 6-7).

On July 1, 2014, Plaintiff was transferred away from Marion, and he was eventually placed at USP-Coleman (Doc. 1-1, pp. 8-9). He asserts that this transfer was "bolstered" by the May 22 disciplinary report for his alleged housing refusal. He appealed that incident report, and the BOP's regional office later returned the disciplinary matter to Marion for officials there to address the procedural error of failing to consult psychological staff (Doc. 1-2, p. 32). Defendant Walton, in response to the appeal, informed Plaintiff that his mental health care level was changed from Level 2 to Level 3, and he was transferred away from Marion to a Level 3 facility as a result (Doc. 1-1, pp. 8-9). Defendant Patterson collaborated by removing Plaintiff's lower mental health level status to facilitate his transfer (Doc. 1-1, p. 16). Plaintiff disputes that he was sent to a "Level 3" facility, noting that he was in fact transferred to a prison that was almost 1,000 miles away from his family, and that the new prison had the same Level 2 mental health classification as Marion. Plaintiff later learned (in September 2014) from his counselor at USP-Coleman that the May 22, 2014, incident report from Marion was expunged (Doc. 1-1, p. 15).

Plaintiff asserts that he was "subjected to an orchestrated effort" by Defendant J. Byram and others to discriminate against him "for their own personal intolerance of his behavioral mental health disability and residual symptoms thereof" (Doc. 1-1, p. 9). Further, they retaliated against him for filing grievances over the need for a single cell to accommodate his serious mental health needs, other conditions, and disciplinary reports. Plaintiff also notes that the "Level 3" transfer was suspect because upon his arrival at USP-Coleman on July 17, 2014, his

classification was immediately reduced back to the "Care Level 2-Mental Health" status he had been under at Marion.

At Coleman, he was placed in a double cell, where his mental health symptoms caused conflicts, further moves to different cells, and placement in solitary confinement after an "unfounded disciplinary investigation" on June 17, 2015 (Doc. 1-1, pp. 9-10). Plaintiff's psychological and physical ailments have become more severe and frequent since he has been returned to a double cell.

Plaintiff's narrative then turns to another aspect of his confinement while he was still imprisoned at Marion. On May 27, 2014, Defendants Cook, Morrison, and J. Byram placed Plaintiff in a "boxcar cell" after they found that he had not been eating meals for five days (Doc. 1-1, p. 11). The cell was filthy – it was infested with bugs and ants, reeked of human waste and urine, and had food crumbs, hair, and fecal matter smeared and dried on the wall near the bed. Plaintiff asked for the cell to be cleaned, but Defendant Cook told him, "you shouldn't have come on hunger strike." *Id*. In addition, Defendant J. Byram (as reported to Plaintiff by Defendant Cook) shut off the water to the cell and had the cell doorway sealed off with a solid Plexiglas shield, with orders to maintain those conditions until Plaintiff was able to eat.

For the seven days between May 27 and June 2, 2014, Plaintiff was held in "total isolation" in the boxcar cell (Doc. 1-1, p. 12). The lights were on 24 hours per day, he was not exposed to the outdoors, and he was surrounded by the four concrete walls with the door sealed off. All of the SHU officers in charge were aware of the conditions and Plaintiff's mental health issues. Defendant J. Byram kept Plaintiff in those conditions in retaliation for Plaintiff's activity of filing grievances and refusing to eat solid food.

Several Marion officials, including Defendants Dawn, Patterson, Richardson, May, and

Thompson, visited Plaintiff's cell during that time. Plaintiff complained to them that he needed water and was having trouble breathing because of the excessive heat and foul smell. But these Defendants did nothing to remedy the conditions in Plaintiff's cell or to provide him with water (Doc. 1-1, p. 13).[1] Plaintiff notes that he was denied access to cleaning supplies and hygiene materials for the entire period in the boxcar cell, even after the water was restored on May 29, 2014 (Doc. 1-1, p. 23). Defendant Officers-in-Charge Hicks, Morris, Richey, Tanner, Bufford, Snyder, Mowery, Waters, Will, and Hampton, as well as other Jane/John Does, refused to move Plaintiff from the dangerous conditions in the boxcar cell, because they were acting in concert with Defendant J. Byram. Defendant Cook also was aware of the conditions, due to complaints raised by other inmates on Plaintiff's behalf, but he took no action (Doc. 1-1, p. 14). Ultimately, Plaintiff was transferred to FCI-Memphis, where he remains in custody.

Plaintiff raises several claims based on this factual narrative: (1) Defendants Walton, S. Byram, J. Byram, Behle, and Patterson failed to provide him with mental health treatment when they ceased housing him in a single cell for non-medical reasons; (2) Defendants Walton, S. Byram, Behle, J. Byram, and Patterson retaliated against Plaintiff for filing grievances over the conditions of his confinement, by transferring him to another prison, filing a false disciplinary report against him, and placing him in the boxcar cell; (3) Defendants J. Byram and others housed Plaintiff in unsafe and unsanitary conditions for several days in the boxcar cell; (4) Defendant Samuels violated the Americans with Disabilities Act and the Rehabilitation Act by denying Plaintiff the reasonable accommodation of being placed in a single-man cell on account of his mental health condition.

---

[1] At this point, Plaintiff's narrative is interrupted by the omission of pages 14 and 15 of his complaint. The missing pages would have appeared between pages 13 and 14 of Doc. 1-1.

**The Motion for TRO/Preliminary Injunction (Doc. 10)**

Plaintiff filed this motion on August 18, 2016, nearly three months after he filed this action, and more than two years after he was transferred away from USP-Marion to an institution in another state. He introduces the motion by requesting that "Defendants stop subjecting him to retaliatory transfers because of seeking an (ADA) request for documented mental impairment," and that Defendants "reinstate their recommendation to executive and/or custody unit team staff that [Plaintiff] be assigned a single cell." (Doc. 10, p. 1).

The attached "Memorandum of Points and Authorities in Support of Plaintiff's Motion for Preliminary Injunction" contains several other specific requests for injunctive relief (Doc. 10, pp. 5-6). These include: restraining Defendants from imposing discipline on Plaintiff for conduct that is the result of his severe mental illness; requiring Defendants to house Plaintiff in a single cell in the general population of his current facility (FCI-Memphis); and ordering Defendant Samuels to remove Plaintiff from the "cruel and unusual punishment of the Segregated Housing Unit (SHU) for merely having a known disability and filing grievances."

The memorandum recites additional facts not included in the complaint. Plaintiff alleges that he is currently being housed again in the SHU at Memphis, facing re-designation back to a higher security prison for "an exact same scenario" arising from his request for a single cell related to his mental health condition (Doc. 10, p. 6). He also references and attaches as an exhibit an "expert report" of Dr. Kevin Byrd (Exhibit A), which was prepared for Plaintiff's "pending FTCA suit" in another district[2] (Doc. 10, pp. 12, 18-19, 25-52, 66-87). The expert opined that Plaintiff should be placed in the psychiatric unit of a federal medical facility. Plaintiff claims that "employees of Defendant Samuels" are aware of Plaintiff's severe mental health conditions, yet have placed him in solitary confinement in the SHU despite professional opinions

[2] That suit is *Keller v. United States*, Case No. 09-cv-297-JMS-TAB (S.D. Ind.).

that such placement would exacerbate the types of symptoms he suffers from (Doc. 10, pp. 14-16).

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:**   Eighth Amendment claim against Defendants Walton, S. Byram, J. Byram, Behle, and Patterson, for deliberate indifference to Plaintiff's serious mental health condition in that they housed him under conditions that worsened his psychiatric symptoms;

**Count 2:**   First Amendment retaliation claim against Defendants Walton, S. Byram, Behle, J. Byram, Patterson, and Mowery, who took adverse actions against Plaintiff (a retaliatory transfer, false disciplinary report, and placement in the boxcar cell) because he filed grievances over his conditions of confinement;

**Count 3:**   Eighth Amendment claim against Defendants J. Byram, Morrison, Mowery, Cook, Bufford, Bushnell, Snyder, Will, Tanner, Morris, Waters, Richey, Hicks, Hampton, Dawn, May, Thompson, Richardson, Trovillion, Pass, and other Jane/John Doe SHU Officers, who kept Plaintiff confined in unsanitary and unsafe conditions in the boxcar cell for seven days, and/or failed to mitigate those conditions after learning of them;

**Count 4:**   Illinois state law claims for gross negligence, malice, oppression, and wanton infliction of emotional distress, against the Defendants named in Count 3, based on Plaintiff's confinement in the boxcar cell;

**Count 5:**   Statutory claim against Defendant Samuels for violating the Americans with Disabilities Act, for refusing to house Plaintiff in a single-man cell to accommodate his psychological disabilities.

**Count 6:**     Statutory claim against Defendant Samuels for violating the Rehabilitation Act, for refusing to house Plaintiff in a single-man cell to accommodate his psychological disabilities.

The claims in Counts 1, 2, and 3 shall proceed for further consideration in this action against some of the Defendants. Counts 4 and 5 fail to state a claim upon which relief may be granted, however, and they shall be dismissed.

As to Count 6, Plaintiff may have a viable Rehabilitation Act claim for injunctive relief. Given the fact Plaintiff has not been incarcerated in the Southern District of Illinois since July 2014, however, and because the Marion-based Defendants would not have been directly involved in any decisions regarding the conditions of Plaintiff's recent confinement at Memphis, the Court finds it appropriate to sever Count 6 into a new action and transfer the Rehabilitation Act claim against Defendant Samuels (in his official capacity only) to the United States District Court for the Western District of Tennessee. The severed case to be transferred also shall include the motion for TRO and preliminary injunction (Doc. 10). The transferee court will determine whether Plaintiff shall be required to file any additional or amended pleading, and that court will handle the disposition of the motion for TRO and preliminary injunction.

Plaintiff's language in the motion for TRO and preliminary injunction (Doc. 10) indicates that he may be seeking to assert an Eighth Amendment claim against Defendant Samuels or his employees who have placed Plaintiff in the SHU at FCI-Memphis. But the current complaint does not identify any Memphis officials who may have been deliberately indifferent to Plaintiff's serious mental health needs at that institution. The question of whether Plaintiff may pursue such a claim, if he intended to do so, will be left to the transferee court for determination.

**Count 1 – Deliberate Indifference to Serious Mental Health Needs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate

must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. The Seventh Circuit has found that "the need for a mental illness to be treated could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir. 1983). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff alleges that Defendants Walton, S. Byram, J. Byram, Behle, and Patterson were all aware of his mental health condition and the fact that being housed with a cellmate would trigger his symptoms and lead to conflicts. He indicates that his disruptive behavior, which led to disciplinary charges and his cell and prison reassignments, was caused by his mental illness. Rather than follow the longstanding treatment recommendations for Plaintiff to be housed in a single cell, Defendants reassigned him to a three-person cell and then transferred him to another prison.

At this early stage, the complaint pleads a cognizable Eighth Amendment claim for deliberate indifference to Plaintiff's serious mental health needs, with respect to these

Defendants' decision to house Plaintiff under conditions that would exacerbate his condition, and which went against the earlier medical opinion that he should remain in a single cell. Further factual development is necessary before the Court can determine whether Defendants Walton, S. Byram, J. Byram, Behle, and/or Patterson violated constitutional norms. **Count 1** shall therefore proceed for further review.

**Count 2 – Retaliation**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Here, Plaintiff has described raising complaints and filing grievances over his conditions of confinement, particularly his cell placements. He asserts that his transfer (allegedly to a mental health "Level 3" prison), placement in the boxcar cell, and the May 22, 2014 disciplinary report were engineered and approved by Defendants in retaliation for his complaint and grievance activity. Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under Section 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason*

*v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in Defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551.

This is a question that cannot be resolved at the pleading stage of this case. Plaintiff's retaliation claim in **Count 2** against Defendants Walton, S. Byram, Behle, J. Byram, Patterson, and Mowery shall therefore proceed for further consideration.

**Count 3 – Unconstitutional Conditions of Confinement**

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

In order to prevail on a conditions-of-confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Jackson v.*

*Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the intent with which the acts or practices constituting the alleged punishment are inflicted; in other words, the state of mind of the defendant. *Jackson*, 955 F.2d at 22; *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, this is deliberate indifference to inmate health or safety; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The Seventh Circuit has specifically held that "unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Vinning-El v. Long*, 482 F.3d 923, 924-25 (7th Cir. 2007) (reversing summary judgment where prisoner was held for six days without sanitation items in cell contaminated with human

waste and in which sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (reversing summary judgment where prisoner denied cleaning supplies and confined for three days to cell that was smeared with human waste and lacked running water)). *See also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (thirty-six hours with no working toilet, flooded cell and exposure to human waste as well as the odor of accumulated urine, stated Eighth Amendment claim).

Here, Plaintiff's description of the conditions in the boxcar cell closely resemble the circumstances which stated viable claims in the above cases – he had no running water (neither drinking water or toilet water) for several days, the cell was contaminated with human waste and reeked of the odor of feces and urine, it was infested with insects, and Plaintiff was given no supplies to clean the cell. Plaintiff had trouble breathing because of the heat and lack of air circulation due to the cell door being sealed off with Plexiglas.

Plaintiff claims that Defendants J. Byram, Morrison, Mowery, Cook, Bufford, Bushnell, Snyder, Will, Tanner, Morris, Waters, Richey, Hicks, Hampton, and Jane/John Does were directly responsible for housing him under those conditions. Defendants Dawn, Patterson, Richardson, May, and Thompson visited Plaintiff in the boxcar cell and were informed by him about the lack of water, excessive heat, and other conditions yet did nothing to help him.

Plaintiff also includes Defendants Trovillion and Pass in his summary of this deliberate indifference claim (Doc. 1-1, p. 24), yet he does not include any facts to support his conclusion that Defendant Trovillion was "aware or should have been aware" of the danger posed to Plaintiff by the cell conditions. Similarly, Plaintiff asserts that Defendant Pass was negligent in supervising his subordinates and "created a custom or policy fostering the unconstitutional provision of medical care," *Id*., without offering any factual description of Defendant Pass's

involvement in Plaintiff's placement in the boxcar cell, or whether Defendant Pass had any knowledge of the cell conditions. Without supporting factual allegations, Plaintiff fails to state a deliberate indifference claim against these individuals upon which relief may be granted.

Defendant Scmuer is mentioned only briefly. Plaintiff states that after he refused to allow Defendant Richardson to take his vital signs as a way to compel him to give Plaintiff some water, Defendant Richardson left to fetch Defendant Scmuer (Doc. 1-1, p. 13). No other allegations regarding Defendant Scmuer appear in the complaint. Thus, no viable claim is stated against Defendant Scmuer.

It is possible that the two missing pages from the complaint contained factual statements regarding these Defendants' involvement in exposing Plaintiff to the conditions in the boxcar cell, however, the Court must consider the complaint as it presently stands.[3] Defendants Trovillion, Pass, and Scmuer shall be dismissed from the action without prejudice.

At this stage, Plaintiff may proceed on his Eighth Amendment claims in **Count 3** against Defendants J. Byram, Morrison, Mowery, Cook, Bufford, Bushnell, Snyder, Will, Tanner, Morris, Waters, Richey, Hicks, Hampton, Dawn, May, Thompson, Richardson, and the Jane/John Doe SHU Officers.

**Dismissal of Count 4 – State Law Tort Claims**

The Federal Tort Claims Act ("FTCA") provides jurisdiction for suits against the United States regarding torts committed by federal officials. Thus, federal prisoners may bring suit,

---

[3] If Plaintiff wishes to re-submit the missing two pages, he cannot do this piecemeal. Instead, he must submit a complete complaint and label it "First Amended Complaint." If he chooses to file an amended complaint, it should include only the claims in Counts 1, 2, and 3, not the dismissed claims. He also must serve a copy of the amended complaint on the defendants who remain in this action. Plaintiff must also re-submit any exhibits he wishes to file, along with the First Amended Complaint. Plaintiff should note, however, that voluminous exhibits are not necessary at this early stage of the case. Plaintiff is advised to consult Federal Rule of Civil Procedure 15(a) and SDIL Local Rule 15.1 with reference to amendment of pleadings.

pursuant to the FTCA, for injuries sustained through the negligent or wrongful acts or omissions of prison officials. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (discussing *United States v. Muniz*, 374 U.S. 150 (1963)). The United States may be sued for a tort committed by a federal employee in the scope of his/her employment, if the individual would be liable under state law for the act or omission. *See* 28 U.S.C. § 1346(b)(1). Notably, however, a plaintiff may not bring a suit under the FTCA unless he has first presented his claim to the appropriate federal agency and that agency has denied the claim. 28 U.S.C. § 2675(a). A plaintiff bringing a claim under the FTCA generally shows exhaustion by filing with his complaint a copy of the "final denial of claim" letter indicating that agency review has been completed and the individual may seek relief in court.

In this case, Plaintiff's claims that certain Defendants committed the torts of gross negligence, malice, oppression, and wanton infliction of emotional distress in connection with his confinement in the boxcar cell, might be brought under the FTCA. Plaintiff has not alleged, however, that he ever filed an administrative claim under the FTCA, much less pursued it through all levels to exhaust his administrative remedies. For this reason, Plaintiff's FTCA claims under **Count 4** for violations of Illinois tort law by the Defendants shall be dismissed without prejudice.

**Dismissal of Count 5 – Americans with Disabilities Act**

Under Title II of the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A public entity is defined in the Act as "a state or local government," or any "department, agency, special purpose district, or other

instrumentality of a State or States or local government." 42 U.S.C. § 12132(1). By this definition, the federal government, and federal agencies, are excluded from liability under the ADA. *See also Cellular Phone Taskforce v. F.C.C.*, 217 F.3d 72, 73 (2nd Cir. 2000) (federal agency not liable under Title II of the ADA); *Crowder v. True*, 1993 WL 532455, *5 (N.D. Ill. Dec. 21, 1993), *aff'd*, 74 F.3d 812 (7th Cir. 1996) (affirming dismissal of ADA claim brought by federal prisoner because federal defendants are not subject to the ADA).

Under these authorities, Plaintiff cannot maintain an ADA claim against the federal Bureau of Prisons or its employees. **Count 5** shall therefore be dismissed with prejudice.

**Count 6 – Rehabilitation Act**

In contrast to the ADA, Plaintiff may be able to bring a claim under the Rehabilitation Act. If a branch of the federal government (here, the Federal Bureau of Prisons) is found to have violated the Rehabilitation Act, however, the remedies available to Plaintiff are limited to declaratory and/or injunctive relief, not damages. *See Lane v. Pena*, 518 U.S. 187, 195 (1996) (Congress did not waive the federal government's sovereign immunity against monetary damage awards "beyond the narrow category of § 504(a) violations committed by federal funding agencies acting as such – that is, by 'Federal provider[s]'"); *see also Sarvis v. United States*, 234 F.3d 1262 (2d Cir. 2000) (former federal prisoner could not obtain money damages against the BOP pursuant to the Rehabilitation Act because BOP was not acting as a "Federal provider" within the meaning of the Act); *LaFaut v. Smith*, 834 F.2d 389, 394-95 (4th Cir. 1987) (the only remedies available against the BOP for a violation of the Rehabilitation Act were declaratory and injunctive relief). In the case at bar, Plaintiff's operative complaint seeks only damages, not equitable relief.

More recently, in the motion at Doc. 10, Plaintiff did request injunctive relief in order to accommodate his serious mental health condition. As noted above, however, Plaintiff has not been housed in Marion or in this Judicial District since July 2014. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

Injunctive relief relative to Plaintiff's mental health treatment (or lack thereof) at Marion is a matter that has become moot. On the other hand, Plaintiff's request for a TRO and/or preliminary injunction regarding possible Rehabilitation Act violations that may have occurred at FCI-Memphis since July 2014 presents a justiciable question. That matter, however, is not appropriate for this Court to address – the current evidence relating to the claim, as well as witnesses and the prison officials who have made and implemented decisions regarding Plaintiff's treatment and housing will be found in the Western District of Tennessee.

The Court has broad discretion as to whether to sever claims pursuant to Federal Rule of Civil Procedure 21. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Accordingly, Plaintiff's Rehabilitation Act claim in **Count 6** against Defendant Samuels (in his official capacity as Director of the BOP) shall be severed from this action, and transferred to the U.S. District Court for the Western District of Tennessee.

**Pending Motion**

Plaintiff's motion for preliminary injunction and TRO (Doc. 10) shall be transferred along with the severed claim in Count 6 to the U.S. District Court for the Western District of Tennessee. The Clerk is **DIRECTED** to terminate the motion (Doc. 10) on this Court's docket.

**Disposition**

**COUNT 4** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. **COUNT 5** is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. Defendants **TROVILLION, PASS,** and **SCMUER** are **DISMISSED** from this action without prejudice.

**IT IS HEREBY ORDERED** that Plaintiff's Rehabilitation Act claim (**COUNT 6**) is administratively **SEVERED** into a new case. That new case shall be: Claim against **DEFENDANT SAMUELS (in his official capacity only)** for violations of the Rehabilitation Act.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)   This Memorandum and Order,
(2)   The Original Complaint (Doc. 1), and
(3)   Plaintiff's motion for preliminary injunction and TRO (Doc. 10).

The Clerk is **DIRECTED** to transfer the newly severed case, to be captioned as ***Charles Derrick Keller, Plaintiff, v. Charles Samuels, Defendant***, to the United States District Court for the Western District of Tennessee. No summons shall issue in the severed action unless so directed by the transferee court.

**IT IS FURTHER ORDERED** that Defendant **SAMUELS** is **TERMINATED** from ***this*** action with prejudice.

With reference to **COUNTS 1, 2, and 3**, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WALTON, S. BYRAM, J. BYRAM, MORRISON, MOWERY, COOK, BUFFORD, BUSHNELL, SNYDER, WILL, TANNER, MORRIS, WATERS, RICHEY, HICKS, HAMPTON, DAWN, BEHLE, MAY, THOMPSON, RICHARDSON,** and **PATTERSON;**

the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **WALTON, S. BYRAM, J. BYRAM, MORRISON, MOWERY, COOK, BUFFORD, BUSHNELL, SNYDER, WILL, TANNER, MORRIS, WATERS, RICHEY, HICKS, HAMPTON, DAWN, BEHLE, MAY, THOMPSON, RICHARDSON,** and **PATTERSON** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[4] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Service shall not be made on the Unknown (Jane/John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a

---

[4] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 9, 2016**

**NANCY J. ROSENSTENGEL**
**United States District Judge**